Baldwin Appeal.

Argued April 12, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Clarence T. Bryan,* with him *Paul B. Joslin* and

*James P. Bryan,* of *Bryan, Joslin & Bryan,* for appellants.

*J. B. Held,* County Solicitor, for appellee.

OPINION BY RHODES, J., September 13, 1943:

This appeal is from an order of the Court of Common Pleas of Erie County sustaining certain assessments of real estate made by the county commissioners acting as a board of revision of taxes.

Appellant, a builder, owned certain lots in the city of Erie. On August 31, 1940, when the inter-triennial assessments by the assessors should have been completed and returned, the lots were either vacant or houses were being built thereon. Appellee does not contend that the buildings eventually erected were assessable as improvements on August thirty-first. The triennial assessment covered only the land. Although appellant denied that the houses were occupied prior to April 1, 1941, for the purposes of this appeal it may be assumed that the improvements were completed on or before December 1, 1940, when the return of the assessor showing the 1940 reassessment of these properties with the value of the improvements added was filed. Appellant had due notice, and thereafter appealed to the county commissioners acting as a board of revision on the ground that the General County Assessment Law of May 22, 1933, P. L. 853, art. 4, §431 (c), 72 PS §5020—431(c),[1] which fixes the time for the completion and return of the assessments in counties of the fourth class, is mandatory. The county commissioners acting as a board of

[1] Repealed by "The Fourth to Eighth Class County Assessment Law" of the 21st day of May, 1943, P. L. ——, No. 254, in so far as it applied to counties of the fourth, fifth, sixth, seventh, and eighth classes except as to the designation of objects, property, and persons subject to and exempt from taxation for city and school purposes in cities and the assessment and valuation thereof for such purposes.

revision refused to revise or modify the assessments, and the court of common pleas dismissed appellant's exceptions, and the assessments as made were sustained.

The question presented to us for decision is a narrow one, and involves only the construction of the act of 1933 in so far as it fixes the time for completion and return of assessments in inter-triennial years. It is agreed that no question as to the valuation of the properties assessed is involved.

The court below was of the opinion that the act of 1933 was directory and not mandatory. Appellant admits that if the provision in question is held to be mandatory an improvement made after August thirty-first of any year other than a triennial year would be tax free during the subsequent year, and argues that this was the intention of the law. We do not so construe the statute. The interpretation suggested by appellant is not necessary for the protection of property owners from unjust or inequitable taxation, or from the overreaching of the taxing authorities; but it would permit unwarranted exemptions from taxation. See sections 201, 204, of the Act of May 22, 1933, P. L. 853, 72 PS §§5020—201, 5020—204.

The Act of May 22, 1933, P. L. 853, art. 4, §431(c), 72 PS §5020—431(c), provides as follows: "In counties of the fourth class, the precepts to make assessments in the years between triennial assessments shall be issued to the assessor by the county commissioners on or before the first day of June, and the assessors are hereby required to complete the said assessments and to make return thereof not later than ninety days from the date of the issuing of said precepts."

Whether a particular statute is directory or mandatory does not depend upon its form, but upon the intention of the legislature, which is to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from

construing it one way or the other. *McQuiston's Adoption*, 238 Pa. 304, 308, 86 A. 205. Generally, where an act of assembly commands an act to be performed within a specified time, the words are mandatory, but there are many exceptions to this rule. *East Lake Road and Payne Avenue*, 309 Pa. 327, 329, 163 A. 688. It has been repeatedly said that whether a statute is mandatory or not depends on whether the thing directed to be done is of the essence of the thing required. *Com. ex rel. Kelley v. Pommer et al.*, 330 Pa. 421, 436, 199 A. 485, and cases there cited.

Section 431(c) of the Act of 1933, 72 PS §5020—431(c), is similar—as it relates to the time for completing the assessments and making a return—to section 401(d) of the same act, 72 PS §5020—401(d), which regulated triennial assessments in fourth class counties, and which in turn was derived from section 1 of the Act of May 10, 1929, P. L. 1712, 72 PS §5024. The previous act relating to inter-triennial assessments in counties generally (Act of April 23, 1903, P. L. 292, §2, as amended by the Act of May 9, 1929, P. L. 1692, 72 PS §5043) similarly specified the time for completing assessments and making returns, and also contained the following proviso: "Provided, however, That in cases of emergency, or in wards where an assessor cannot complete the reassessment within the said ninety days, the county commissioners of any county may, at their discretion, extend the time for completing the said reassessment and for making said return thereof."

Other parts of section 431 of the Act of 1933, 72 PS §5020—431, by expressly providing for extensions of time where assessors fail to complete their assessments within the time originally fixed, manifest a legislative intent that the time limit is directory only, and not mandatory, so long as there is no substantive interference with the taxpayer's rights. For instance, in paragraph (d) of this section, 72 PS §5020—431(d), requiring assessors in counties of the fifth, sixth, seventh,

and eighth classes to make their returns not later than ninety days from the issuing of the precepts on or before the second Monday of September (assessors in townships of the first class receive their precepts on or before the first day of July), there is the following: "Provided, That in cases of an emergency, or in wards where an assessor cannot complete the reassessment within the said ninety days, the county commissioners may, at their discretion, extend the time for completing the said reassessment and for making return thereof· And provided further, That where assessors in townships of the first class shall have been continuously engaged in the actual performance of their duties after the delivery of the precepts to them, except where prevented by sickness or stress of weather, and are not able to complete the assessment and make return thereof as herein provided, it shall be lawful for said assessors to continue the performance of their duties and to make return of their assessment to the county commissioners after said date, but in no case shall any such return be made later than the fifteenth day of February of the year following the delivery of the precepts to the assessors."

Under the Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551, where the words of a statute are not explicit, the legislative intent may be ascertained by considering "(5) the former law, if any, including other laws upon the same or similar subjects."

Section 432 of the Act of 1933, 72 PS §5020—432, directed the commissioners to send precepts to the assessors in inter-triennial years "requiring them ...... to reassess all real estate which may have been improved by the erection of buildings or other improvements subsequent to the last preceding triennial assessments, subject to appeals as now provided by law." It is not reasonable to suppose that the legislature intended an owner of real estate to escape taxation on the value of improvements completed during September,

October, or November for the entire year following. On the contrary, we think this section is declaratory of the purpose to have all such improved real estate duly assessed; and we find no infirmity in the statute such as appellant contends.

In our opinion the limitation in section 431(c), 72 PS §5020—431(c)—ninety days after June 1—was intended principally as an administrative rule and regulation to promote dispatch in the completion of the assessments, and the assessment of an improvement after the time specified in paragraph (c) did not render void or invalidate the reassessment, nor subject it to attack on that ground by the taxpayer who has not been otherwise harmed. Neither from the nature of the act to be performed nor from the language used by the legislature can it be said that the designation of the time was intended as a limitation on the power of the assessor to act.

We are not unmindful that statutes regulating the assessment or levy of taxes must be given a mandatory construction, if their purpose is to protect the taxpayer; but if the statute is simply intended to establish a uniform system of procedure and to promote dispatch, and if non-compliance does not injure the taxpayer, the statute is to be construed as directory. See Construction of Statutes, Crawford (1940), p. 537, §270, and 26 R.C.L. p. 355. As stated in 61 C.J. p. 621, §761: "The revenue laws commonly provide that the assessment shall be made, or shall be completed, on a certain day or within a certain time. Such a provision is so far directory that the assessment will not be invalidated by a delay beyond the statutory time, unless it is shown that the delay prejudiced the particular taxpayer by depriving him of a right to be heard before the board of equalization or otherwise operated to his disadvantage." In *Insurance Company v. Yard*, 17 Pa. 331, at page 338, our Supreme Court said: "Many pro-

visions in our statutes, regulating the imposition of taxes, must be considered directory merely. Some are doubtless conditions, such as those which are intended to secure an equality of taxation or burdens among the citizens; that is, that the citizen may know for what he is taxed, know his valuation, and have notice of the time and place of appeal."

Appellant had notice of the reassessments; he appealed and was heard before the board of revision; he was deprived of no right. Consequently, we fail to see why he or anyone in a similar position should escape taxation for an entire year on their real estate by giving the construction urged to the provision in the act as to the time of the asssessor's return. Wherever possible acts should be construed so that there is an equalization of the burden of taxation. It is our conclusion that the time of the return in the present case did not invalidate the assessments or render them void.

*Voltz v. County of Erie,* 81 Pa. Superior Ct. 467, relied upon by appellant, is distinguishable and not controlling here. We there held that an assessor could not recover compensation for work done between January and July of 1920 in connection with personal property assessments which he had been unable to finish by December 31, 1919, the expiration of his then term. The Act of April 23, 1903, P. L. 292, No. 224, §2, required assessors to complete the reassessment of property between the periods of the triennial assessments and make their return thereof "not later than the thirty-first day of December of the same year." The Act of April 13, 1911, P. L. 64, amended the second section of the Act of 1903 by requiring the assessors to complete such reassessments and make their return thereof not later than ninety days from the date of the issuing of the precepts on or before the second Monday of September. 72 PS §5043. In holding that his claim for such services was invalid, Judge KELLER (now President Judge) stated (81 Pa. Superior Ct. 467, at page

473) : "It was the duty of the plaintiff to complete his assessment, as respects both real and personal property, and make return thereof, within the time limited by law, and certainly not later than December 31, 1919. His term of office expired on the first Monday of January, 1920, and he could not perform any official duties after his term had expired ...... It follows that whatever work he may have performed after the thirty-first day of December, 1919, was work which should have been done by him prior to that date and for which he is not entitled to additional compensation." In the *Voltz* case plaintiff sought to recover for services rendered (1) not only after the time prescribed by statute for completion of the work, but also (2) after the end of the calendar year, and (3) after the expiration of plaintiff's term of office. In the case before us the reassessments, although not completed within the time directed by statute, were returned before December thirty-first, the end of the year in which the improvements were made.

The order of the court is affirmed.